**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 13‒cv‒02187‒RM-CBS

PACIFICORP,

    Plaintiff,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

    Defendant.

---

**ORDER RE
MOTIONS FOR SUMMARY JUDGMENT (ECF NO. 37 & NO. 43)**

---

THIS MATTER comes before the Court on the parties' cross motions for summary judgment (ECF Nos. 37 & 43). Plaintiff PacifiCorp's Motion for Summary Judgment seeks an order finding that Defendant United States Environmental Protection Agency ("EPA") violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by improperly responding to two FOIA requests; directing the EPA to certify it has now fully complied with the FOIA; directing the EPA to submit any withheld information to the Court for an *in camera* review; and awarding attorney's fees and costs. The EPA's Motion for Summary Judgment seeks an order finding it conducted an adequate FOIA search and properly segregated, redacted, and released documents as required by the FOIA. Upon consideration of the papers[1] filed with the Court and the applicable law: (1) PacifiCorp's motion is granted in part, denied in part, and deferred for consideration in part; and (2) the EPA's motion is granted in part and denied in part.

---

[1] The EPA's Reply brief has not yet been filed but the Court finds the same issues are raised in both motions and are completely briefed in light of the papers submitted to date. *See* D.C.COLO.LCivR 7.1C. (judicial officer may rule on motion at any time after it is filed).

## I. FACTUAL BACKGROUND

### A.  PacifiCorp's FOIA Requests.

PacifiCorp made two FOIA requests seeking information relating to *WildEarth Guardians v. Jackson*, Civil Action No. 11-cv-00001-CMA-MEH ("*WildEarth Guardians*"), pending before Judge Christine M. Arguello of this District.  In *WildEarth Guardians,* the plaintiffs alleged the EPA failed to undertake duties under the Clean Air Act relating to regional haze implementation plan requirements for the state of Wyoming.  By order dated September 27, 2011, Judge Arguello entered a Consent Decree proposed by the *WildEarth Guardian* parties, retaining jurisdiction to enforce or modify such decree.

In December 2012, the EPA filed a motion to extend certain deadlines in the Consent Decree.  In a January 2013 FOIA request to the EPA, PacifiCorp identified six categories of information it sought, with the first three directed to documents regarding the EPA's communications with the plaintiffs in the *WildEarth Guardians* litigation relating to modifications of the Consent Decree.  The other three categories consisted of documents referenced in the EPA's motion to extend deadlines.

In March 2013, the parties in the *WildEarth Guardian* litigation stipulated to extend the deadlines in the Consent Decree further.  In response, in April 2013, PacifiCorp filed a second FOIA request, seeking all information the EPA relied on or otherwise utilized in entering into the stipulation and communications about related modifications to the Consent Decree.  PacifiCorp specifically requested information concerning communications with two of the plaintiffs in the *WildEarth Guardians* litigation.

PacifiCorp seeks the requested information in order to provide public comments, in additional to those it has previously provided, on an EPA rule concerning the regional haze program in Wyoming. Under the Consent Decree, as modified, the EPA's rulemaking deadline is January 10, 2014.

### B.    The EPA's Initial Search and Responses.

To locate information responsive to the first three categories of PacifiCorp's first FOIA request, ten EPA employees searched their records and the potentially responsive documents were then reviewed for responsiveness and releasability. Through two responses, the EPA released 41 documents in full but withheld 166 responsive documents under the attorney-client, attorney work-product, and deliberative process privileges, making no effort to redact and release nonexempt information from the withheld documents. As this Court has previously found after hearing on PacifiCorp's Motion for Preliminary Injunction (ECF No. 33, page 4), due to a miscommunication between the parties, the EPA did not conduct a search for documents responsive to the last three categories of documents requested. PacifiCorp filed two administrative appeals of the EPA's responses.

To address PacifiCorp's second FOIA request, six EPA employees searched their records for responsive documents. All but one of these employees were involved in responding to the first FOIA request. The EPA released eight documents and withheld 46 documents based on the attorney-client and deliberative process privileges, again making no effort to redact the withheld documents to release any nonprivileged information. The EPA invoiced PacifiCorp for 1.25 hours of work even though it performed approximately 3.55 hours of billable work (and additional time in nonbillable work) in responding to this request. PacifiCorp filed an administrative appeal of the EPA's responses.

The documents responsive to the FOIA requests contained the names of 23 other employees who potentially had responsive information, but these employees were not asked to conduct a responsive search. Moreover, apparently no search was conducted for hard copies of information. As of May 29, 2013, the EPA found approximately 261 records responsive to the two FOIA requests, of which 49 were released in full and 212 (166 from the first request and 46 from the second request) were withheld in full.

### C.   The EPA's Subsequent Search and Responses.

On November 19, 2013, subsequent to the filing of PacifiCorp's Motion for Summary Judgment, the EPA conducted another search for responsive documents. In that search, all but one (Laurel Dygowski) of the original employees were requested to search[2] for not only electronic but also hard copies of records. Also at or about that time, the EPA "re-reviewed" the responsive records from the initial searches which showed the additional 23 employees and asked them to search as well. Also on November 19, 2013, the EPA searched Jim Martin's, the Regional Administrator during the time period raised by PacifiCorp's request(s), personal email accounts, finding no responsive documents.

The EPA's November 2013 search disclosed approximately 454 responsive documents, including the initial 212 responsive documents. Ultimately, the EPA determined there were a total of 148 additional responsive documents. Of those 148 additional documents, on December 9, 2013,[3] approximately 11 months after the first FOIA request and eight months after the second FOIA request, the EPA: (i) released approximately 53 records (184) pages entirely; (ii) released parts of approximately 95 records (231 pages), withholding the remainder as exempt under exemption 5 (the attorney-client, attorney work-product, and/or deliberative process privileges)

---

[2] A few employees are no longer with the EPA and those employees' records were search by other employees.
[3] The Court is aware of the short government shutdown in October 2013.

and/or exemption 6 (personal privacy); and (iii) provided a 73-page *Vaughan* index.[4] Declarations in support of the *Vaughan* index were also submitted.

### D. The Redacted Documents and *Vaughan* Index.

Except for two[5] of the 95 records listed in the *Vaughan* index, the following are disclosed in the index: (i) date; (ii) author; (iii) recipient(s); (iv) some subject identification; (v) factual description of the record (*e.g.,* EXE-1 is described as an email from one EPA attorney to other EPA attorneys transmitting legal counsel and advice about potential and proposed actions regarding Consent Decree deadlines, and providing attorney analysis of potential legal and policy effects of different decision options under consideration); (vi) exemption(s) claimed and the bases/rationale for the same; and (vii) except for attorney work-product privilege material, whether segregable material has been reviewed and released. For documents in which the attorney work-product privilege was claimed, the EPA's evidence is conflicting as to whether each has been reviewed for segregable material and non-exempt material has been released.

## II. ANALYSIS

### A. The FOIA.

"[T]he FOIA is designed to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Anderson v. Dept. of Health & Human Serv.*, 907 F.2d 936, 941 (10th Cir. 1990) (citation and internal quotation marks omitted). Accordingly, the FOIA is to be broadly construed in favor of disclosure and its exemptions are to be narrowly construed. *Id.*

---

[4] A *Vaughan* index is an agency's compilation listing each withheld document and explaining the asserted basis for its nondisclosure. *Anderson v. Dep't. of Health & Human Serv.*, 907 F.2d 936, 940, n.3 (10th Cir. 1990); *see Vaughan v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).
[5] EXE-3 and EXE-61, which are discussed *infra.*

The agency must demonstrate that it made a good faith effort to conduct a search for the FOIA records requested, using methods which are reasonably calculated to uncover all relevant documents. *Schwarz v. FBI,* No. 98-4036, 1998 WL 667643, at *1 (10th Cir. Sept. 17, 1998); *Information Network for Resp. Mining ("INFORM") v. Bureau of Land Mgmt.*, 611 F.Supp.2d 1178, 1184 (D.Colo. 2009) ("*INFORM v. BLM*"). "To show reasonableness at the summary judgment phase, an agency must set forth sufficient information in its affidavits for a court to determine if the search was adequate." *Schwarz v. FBI, supra* at *1 (citation and quotation marks omitted). "The affidavits must be reasonably detailed, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Id.* at *1 (citation and quotation marks omitted). The reasonableness of the agency's search depends on the facts of each case. *INFORM v. BLM, supra* at 1184.

A search is not unreasonable simply because it failed to produce all relevant material. "The fundamental question is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was *adequate*." *Schwarz v. FBI, supra* at *2 (citation and quotation marks omitted; italics in original). *See also* James T. O'Reilly, *Federal Information Disclosure*, § 7.8 ("Records search disagreements – Reasonableness") (2013).

In order to withhold responsive information uncovered, the government agency must prove the requested information falls within one, or more, of the nine specific exemptions from disclosure. *Hull v. I.R.S.*, 656 F.3d 1174, 1177 (10th Cir. 2011); 5 U.S.C. § 552(a)(4)(B) & (b). "Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b).

The Court may enjoin the agency from withholding records or order the production of any documents improperly withheld. 5 U.S.C. § 552(a)(4)(B).

The Court reviews the government's refusal to release requested information *de novo*. *Hull v. I.R.S., supra* at 1177; 5 U.S.C. § 552(a)(4)(B). The Court has a variety of options it may utilize to determine whether a sufficient factual basis exists for evaluating the correctness of the agency's action, including ordering the production of the withheld information, or some sample thereof, for an *in camera* review; reviewing detailed affidavits/ declarations; or reviewing a *Vaughan* index. *See Hull v. I.R.S., supra* at 1177-1178; *Anderson v. Dep't. of Health & Human Serv., supra* at 942. "If the government agency's *Vaughn* index and affidavits are reasonably clear, specific, and detailed, the court normally affords agency determinations substantial weight." *Public Emp. for Envir. Resp. (PEER), Rocky Mtn. Chapter v. U.S. EPA*, 978 F.Supp. 955, 960 (D.Colo. 1997). If the information provided is insufficient, the Court may issue further orders to ensure it has an adequate foundation for its review. *Anderson v. Dep't. of Health & Human Serv., supra* at 942.

### B.     The EPA's Initial Search.

PacifiCorp argued that, as to the EPA's initial search and response, it failed to produce any redacted material or suggest it attempted to redact any privileged material and produce the remainder of the document. PacifiCorp further asserted that the EPA's subsequent November 2013 search and its results constitutes an admission that it did not conduct an adequate search or produced all responsive documents in the timeframe mandated by the FOIA. The Court agrees there was an initial failure to comply, but not for all the reasons asserted by PacifiCorp.

As argued by PacifiCorp, the EPA was required provide any reasonably segregable portion of a record after redaction of the portions which are exempt but failed to do so. The

7

EPA's declarations confirm this fact, as to the EPA's initial release of information. However, the fact that the EPA conducted a subsequent search and found additional documents subject to disclosure does not, by itself, establish it failed to conduct a reasonable search in the first instance. Instead, the method by which the EPA conducted its initial search demonstrates it was not reasonably calculated to produce the requested information.

Here, the EPA – reasonably – asked employees they knew or believed were likely to have responsive material to conduct a search. The reasonableness of its search, however, dissipates thereafter. The EPA provided no information as to the search terms used or the type of search performed. However, it is apparent that no search was conducted of hard copies of records. Further, the responsive documents revealed an additional 23 employees may have responsive information but they were not asked to conduct a search. Under the facts and circumstances here, any argument by the EPA that such employees were not asked because it was unaware of their involvement would be futile. A simple review of the initial responsive documents would have revealed the need to expand the inquiry. (*See* ECF No. 42-2, ¶7 [a "re-review" of responsive records from original searches showed 23 additional employees' involvement].) *See INFORM v. BLM, supra* at 1184-1185 (agency cannot limit its search to one record system or single file where there is indication that responsive records are likely to be located in other systems or files). This finding is buttressed by the EPA's detailed November 2013 methodology in conducting its second search, requesting those additional 23 employees to search for potentially responsive records and, ultimately, producing redacted materials responsive to PacifiCorp's requests.

The EPA's search also did not include information responsive to the last three categories of information requested by PacifiCorp in its first FOIA request. Nonetheless, the Court finds no

violation by the EPA in light of the parties' miscommunication concerning the EPA's request for authorization to proceed as to this information requested.

Finally, as for the timeliness of its responses, the EPA did not contend that its responses were not untimely but, instead, argued this claim was not pled and was also not a basis for summary judgment. The Court notes that, depending on the facts and circumstances, there is legal support for the proposition that an untimely response under FOIA may be a basis for granting relief, *see INFORM v. BLM, supra* at 1183, but need not reach the issue as it agrees PacifiCorp did not pled any claim for relief based on untimeliness and therefore it cannot serve as a basis for summary judgment. [6]

### C. The EPA's Subsequent Search.

PacifiCorp did not argue the EPA's November 2013 search was deficient and the Court finds the EPA has shown that it was not. Instead, PacifiCorp asserted the EPA's redactions are overbroad and not supported by the explanation in the *Vaughan* index.

### 1. Documents Under Exemption 6.

The *Vaughan* index, along with other supporting evidence, substantiates the EPA's withholding of documents claimed under exemption 6. Under this exemption, the agency need not disclose "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "Similar files" "has a broad, rather than a narrow, meaning and encompasses all information that applies to a particular individual." *Forest Guardians v. U.S. F.E.M.A.*, 410 F.3d 1214, 1217 (10th Cir. 2005) (internal quotation marks omitted). Here, the limited information segregated and withheld through redaction contains personal email addresses, an individual's health and leave, and the

---

[6] For the same reason, PacifiCorp's request for relief based on the timeliness of the EPA's response to PacifiCorp's administrative appeals cannot be sustained.

EPA's conference call and code numbers. (ECF No. 42-6, *e.g.*, EXE-69 to -70 & -74 to -93.) Such information is not only personal but also non-responsive to the FOIA requests. Although PacifiCorp requested the Court to order that all withheld information be submitted for an *in camera* review, it provided no factual or legal basis to support such request as to those documents claimed under exemption 6. Indeed, PacifiCorp's papers are devoid of any discussion concerning exemption 6. Accordingly, the Court finds the EPA properly withheld the information claimed under exemption 6.

### 2. Documents Under Exemption 5.

Exemption 5 excepts from disclosure "inter-agency or intra-agency memorandums [sic] or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "[T]he federal agency resisting disclosure bears the burden of justifying withholding." *Stewart v. U.S. Dep't. of Interior*, 554 F.3d 1236, 1244 (10th Cir. 2009). Whether an exemption justifies withholding a record is a question of law. *Trentadue v. Integrity Committee*, 501 F.3d 1215, 1226 (10th Cir. 2007).

"To qualify under this exemption, a document must be the product of a government agency, and must 'fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it.'" *Stewart v. U.S. Dep't. of Interior, supra* at 1239 (*quoting Dep't of the Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8 (2001)). Exemption 5 allows the withholding of public documents which a private party could not discover in litigation with the agency. *See Trentadue v. Integrity Committee, supra* at 1226.

At issue in this case are the attorney work-product, attorney-client and deliberative process privileges, all of which fall under the ambit of this exemption. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 154 (1975); *Stewart v. U.S. Dep't. of Interior, supra* at 1239. In examining the withheld materials and the EPA's descriptions in the *Vaughan* index, the Court is mindful that PacifiCorp's requests involve the EPA's activities concerning the *WildEarth Guardians* litigation and the Wyoming regional haze implementation plan which, by the very nature of its requests, may implicate the privileges claimed.

      i. *The Work-Product Privilege.*

The attorney work-product covers information reflecting the mental processes of counsel. *Stewart v. U.S. Dep't. of Interior, supra* at 1239. At issue is whether factual information contained in a document that is claimed exempt under the work-product privilege must be disclosed. PacifiCorp argued the segregation and release of purely factual material was required while the EPA argued the privilege protects both factual and legal material. The parties cited to no controlling case law but the Court is persuaded by the reasoning in *Fine v. U.S. Dep't of Energy,* 830 F.Supp. 570 (D.N.M. 1993), and finds that purely factual material must be disclosed.

First, the Court is heedful that the FOIA is to be broadly construed in favor of disclosure, its exemptions are to be narrowly construed, and it requires no showing of need. *See EPA v. Mink,* 410 U.S. 73, 92 (1973), *superseded by statute on other grounds.* Further, the FOIA specifically requires "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection," which, on its face, applies to all FOIA exemptions. 5 U.S.C. § 552(b).

Next, the U.S. Supreme Court and the Tenth Circuit have recognized a distinction between deliberative and factual information. *EPA v. Mink, supra* at 87-88; *Trentadue v. Integrity Committee, supra* at 1229. The Tenth Circuit allows discovery of factual information if it is not "inextricably intertwined" with or would reveal deliberative materials. *Trentadue v. Integrity Committee, supra* at 1229. It has also noted that Exemption 5 does not protect "'memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context,'" *Trentadue v. Integrity Committee, supra* at 1227 (*quoting EPA v. Mink, supra* at 87-88), and acknowledged that factual materials are generally not privileged unless they are inextricably intertwined with policy-making processes, while non-factual materials that express opinions or recommendations are protected. *Id.* at 1227.

Finally, pursuant to Fed.R.Civ.P. 26(b)(3)(A), factual material contained within a work-product document may be available to a party in litigation with the EPA. Specifically, Rule 26 allows the discovery of documents which are prepared in anticipation of litigation by a party's attorney if certain requirements are met, such as need – a requirement inapplicable to the FOIA. Discovery is not permitted, however, for "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation" (collectively, "mental impressions"). Fed.R.Civ.P. 26(b)(3)(B). Based on the foregoing considerations, the Court finds that purely factual information which does not disclose such mental impressions and/or are not "inextricably intertwined" with such mental impressions are subject to disclosure.

The EPA argued it was not required to segregate factual information from work-product documents and its evidence is conflicting as to what actions it took with respect to such documents. The Declaration of Carl Daly stated "all reasonably segregable factual material has

been released to PacifiCorp" but that facts "intertwined with and used by the attorney" do not have to be segregated and disclosed, implying that, perhaps, "intertwined" facts were not disclosed. (ECF No. 42-3, ¶24.) The *Vaughan* index, however, showed, at best, it is unclear and, at the other spectrum, that the EPA deemed all factual material as intertwined with the attorney's mental processes and that *no* attempted redaction occurred. For example, in EXE-1, the EPA claimed exemptions under all three of the privileges at issue but represented that segregable material had been released only as to exemptions claimed under the attorney-client and deliberative process privileges.[7] (ECF No. 42-6, pages 2-3.) In addition, throughout the index, in paragraphs describing materials claimed under the attorney-client privilege the EPA repeatedly represented that all segregable materials have been released, in stark contrast to paragraphs describing materials claimed under the work-product privilege in which no such representation is present. (ECF No. 42-6, *passim*.) Further, in EXE-61, the privilege was claimed but no explanation was given in support and no information was provided as to what was redacted. As such, the Court finds the *Vaughan* index, coupled with the record before the Court, fail to show the EPA properly withheld materials claimed under the attorney work-product privilege.

    ii. *The Attorney-Client Privilege.*

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege serves the client's need for legal advice, but it also serves the attorney's need to receive complete information in order to

---

[7] The EPA stated, in relevant part: "The reasonably segregated portions of this email exchange not containing attorney advice or deliberative content were segregated and released … while the deliberative content and protected attorney-client and attorney work-product information was redacted."

13

give the proper advice." *In re Qwest Communications Int'l, Inc. Securities Litigation*, 450 F.3d 1179, 1185 (10th Cir. 2006) (internal quotation marks and citations omitted).

For those documents withheld under this privilege, PacifiCorp also argued factual materials are subject to disclosure. The EPA has not argued otherwise but represented that it has released segregable, non-confidential factual information. PacifiCorp has not pointed to any specific deficiencies in the *Vaughan* index as to this privilege and, except for EXE-3, the Court's independent review of the factual bases on which such privilege was claimed revealed none. For example, the index supported the claimed exemption by disclosing the involvement of an attorney as sender or responder of an email, identifying the subject matter covered (*e.g.,* the drafting of a stipulation in pending litigation), and providing some specific factual basis (*e.g.,* transmitting a request for legal advice related to the drafting of materials for a case in litigation). (ECF No. 42-6, *e.g.,* EXE-39, -43, -52.) Under the facts and circumstances of this case, the Court finds the index's repeated references to matters such as advice or counsel concerning strategy, deadlines and extensions for the Consent Decree or the *WildEarth Guardian* litigation are not vague or conclusory in light of the requests to which the documents are responsive.

The document identified as EXE-3, however, is a different matter. Here, the information is claimed exempt only under the deliberative process privilege but "protected attorney-client information" was redacted. (ECF No. 42-6, page 3.) Moreover, the description of the information shows it was a communication between nonlawyers, but the "cc'd" included an attorney, Robert Ward. The fact that an attorney was copied on a communication, without more, is insufficient to establish the communication is covered by the attorney-client privilege.

In summary, as to this privilege, the Court finds the *Vaughan* index is not vague, conclusory or categorical and does not merely parrot the FOIA exemption. Instead, except for EXE-3, the index, in conjunction with the EPA's declarations, sufficiently identify each document withheld under the claimed exemption, state the statutory exemption claimed, and explain how the withheld information falls within such exemption. As such, except for EXE-3, the EPA has demonstrated it properly withheld information under this privilege.

### iii. The Deliberative Process Privilege.

"[T]he deliberative-process privilege protects documents, such as advisory opinions, recommendations, and deliberations, that reflect how government decisions are made." *Stewart v. U.S. Dep't. of Interior, supra* at 1239. The privilege may include materials generated by agency employees as well as consultants. *Id.* Its object is to enhance the quality of agency decisions "by protecting open and frank discussion among who make them within the government." *Dep't of the Interior v. Klamath Water Users Protective Ass'n, supra* at 8. "It further serves to prevent the premature disclosure of proposed policies, and avoids misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." *Trentadue v. Integrity Committee, supra* at 1226 (quotation marks omitted).

In order to fall within the scope of this privilege, the documents must be predecisional and deliberative. *Trentadue v. Integrity Committee, supra* at 1227. Further, factual materials are not privileged from disclosure unless: "(1) they are inextricably intertwined with deliberative materials; or (2) their disclosure would reveal deliberative material." *Id.* at 1229 (internal citations omitted). Factual information may be protected "when disclosure would so expose the

deliberative process within an agency that it must deemed exempted." *Id.* at 1228 (quotation marks omitted).

As with the attorney-client privilege, PacifiCorp did not identify any specific deficiencies in the *Vaughan* index as to the documents claimed under the deliberative process privilege. The EPA acknowledged it was required to segregate factual information under the *Trentadue* standard and represented it has done so. The Court finds the index sufficient to permit review of the EPA's withholding decision and, accordingly, as with the attorney-client privilege, affords the EPA's determinations under the deliberative process privilege substantial weight.

The index describes the documents individually, identifying the type of document; the author; the recipients or persons involved; and the justification for claiming the exemption and what was redacted. For example, EXE-21 is described as an email between agency attorneys concerning a draft email to be sent to a Department of Justice attorney; that it involved requesting an extension of the Consent Decree deadline and included advice and recommendations as to the risks and benefits of the agency's proposed approach; and that it was withheld because it was an internal predecisional communication concerning the proposed extension request. As similarly indicated for other materials withheld under this privilege, the EPA stated the information does not represent an official agency decision or policy, but reflects analysis and recommendations on issues still in development, and release would have a chilling effect on the agency's ability to have open and frank discussions. From such descriptions, along with the EPA's declarations, the Court finds the materials claimed to fall within this exemption were appropriately withheld.

16

The Court finds, however, that no deliberative process privilege was claimed for EXE-61 but the EPA stated information within this document is subject to such privilege and redacted the same. In the absence of a claim of privilege, the withholding of such information on this basis was improper.

> *iv. In Camera Review.*

The Court has reviewed the parties' submissions and finds a few inconsistencies but no evidence of bad faith on the part of the EPA. In light of the Court's determination that the EPA's *Vaughan* index and declarations contain detailed explanations of the information withheld and supporting exemptions, an *in camera* inspection is unnecessary.

### III.  CONCLUSION

Based on the foregoing, it is therefore ORDERED as follows:

1. PacifiCorp's Motion is GRANTED in part, DENIED in part, and DEFERRED in part as stated in paragraphs three through six below; and

2. The EPA's Motion is GRANTED in part and DENIED in part as stated in paragraphs three through six below; and

3. PacifiCorp's Motion is GRANTED and the EPA's Motion is DENIED insofar as follows:

    a. For all documents/materials claimed under the attorney work-product privilege, the EPA must disclose the following: in light of the January 10, 2014 rulemaking deadline, upon the receipt of this Order, the EPA is directed to redact all segregable factual material as set forth herein and to produce to PacifiCorp all nonexempt materials forthwith daily on a rolling basis;

    b. For document EXE-3, in light of the January 10, 2014 rulemaking deadline, the EPA must either disclose any material redacted as exempt under the attorney-client privilege or file a declaration with the Court claiming the privilege and providing sufficient justification for such claim no later than **3:00 p.m. on Thursday, January 9, 2014**;

    c. For document EXE-61, to the extent the EPA has withheld any material as exempt under the attorney work-product privilege, in light of the January 10, 2014 rulemaking deadline, the EPA must either release the material withheld or file a declaration with the Court justifying such exemption no later than **3:00 p.m. on Thursday, January 9, 2014**;

    d. For EXE-61, if the EPA is claiming the deliberative process privilege, in light of the January 10, 2014 rulemaking deadline, it must file a declaration with the Court of such claim, and justifying the same, or release any material withheld under such privilege no later than **3:00 p.m. on Thursday, January 9, 2014**; and

    e. Within five (5) business days of the completion of any disclosure ordered under this paragraph 3, the EPA is directed to file a declaration confirming such completion with the Court; and

4. PacifiCorp's Motion is DENIED insofar as it seeks the EPA to produce further materials beyond that ordered herein; and

5. PacifiCorp's Motion is DENIED insofar as it seeks an order for the EPA to produce all documents for an *in camera* review; and

6.        PacifiCorp's Motion is DEFERRED insofar as it seeks attorney's fees and costs. The Court will issue a ruling on this issue after the EPA has filed its declaration in compliance with this Order and may order the parties to file papers in conformance with Fed.R.Civ.P. 54(d).

DATED this 8th day of January, 2014.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge